**AMERICAN CHICLE CO. v. MILLER.**

No. 5030.

Court of Civil Appeals of Texas.

El Paso.

May 5, 1954.

Rehearing Denied May 26, 1954.

H. P. Talley, Thor G. Gade, Jr., El Paso, for appellant.

Hugh J. McGovern, Jr., El Paso, for appellee.

McGILL, Justice.

This was a suit by appellant as plaintiff against appellee as defendant, in which plaintiff sought to recover from defendant $1,000 by reason of a bond given to plaintiff by Robert Joseph Murphy, Jr., as principal, which defendant signed as surety. Murphy was employed by plaintiff as a salesman of its product, chewing gum. The bond was in the sum of $1,000 and its conditions were recited:

"The conditions of this obligation are such that the said Principal has accepted employment with said Obligee, which employment contemplates the principal having in his possession at times certain property belonging to the Obligee.

"Now, therefore, if said Principal shall properly account for and turn over to the said Obligee any and all properties belonging to the Obligee coming into his possession, and when

requested render a full and complete accounting of such property, then this obligation shall be null and void, otherwise to remain in full force and effect."

During the course of his employment plaintiff advanced $850 to Murphy in order to enable him to carry on its business. Murphy left the employment of plaintiff and disappeared without repaying the $850 so advanced, and plaintiff sued on the bond to recover this sum. Trial was to the court without a jury, and judgment rendered that plaintiff take nothing. The court filed the following findings of fact and conclusions of law:

"Findings of Fact.

"(1) On June 30th, 1952, the defendant Joe Miller signed as surety a bond in the sum of One Thousand ($1,000.00) Dollars with the plaintiff American Chicle Company as obligee and Robert Joseph Murphy, Jr., employee of the obligee, as principal.

"(2) The obligee, American Chicle Company, accepted the bond and delivery of said bond was made to obligee's main office in New York.

"(3) That the main condition of such bond is that the principal should turn over to the obligee any and all properties belonging to the obligee coming into his possession and to render a full and complete accounting of such property.

"(4) That the defendant was a gratuitous surety and received no compensation or benefit from having signed such bond as surety.

"(5) That the obligee, through its representative, did not explain to the defendant, Mr. Miller, that the employment of Murphy contemplated that Murphy would have in his possession sums of money belonging to, or owed to the obligee.

"(6) The sum of $850.00 was turned over to Murphy, employee and principal on the bond, and was a 'cash advancement' made by obligee to employee.

"(7) Checks in the sums of $100.00, $67.00 and $20.00 written by Murphy, the principal, and cashed by Food Mart, Grant Company and Gunning-Casteel were drawn on Murphy's personal bank account.

"(8) Murphy, employee of obligee plaintiff, and surety on the bond, absconded and did not repay to plaintiff his cash advancement.

"(9) Murphy's bank account was insufficient and the personal checks written on his personal bank account were not made good by him to the three payees mentioned in Paragraph No. 7 supra.

Conclusions of Law.

"(1) The term 'property' used in the bond does not contemplate and does not embrace 'cash advancements' made by the obligee to the principal.

"(2) The scope of the bond, and the terms 'property' and 'any and all property belonging to the obligee', do not include liability on the part of the surety to the obligee for checks written by the principal on his personal checking account since the principal's personal checking account was never the property of the obligee.

"(3) The plaintiff should therefore recover nothing since the construction of the bond within its four corners never contemplated liability for cash advancements made to the principal by the obligee, nor liability for bad checks written by the principal on his own personal account."

Appellant has presented five points. Point 1 is that the court erred in holding that the word "property" used in the bond did not embrace money or cash advancements and that the bond never contemplated liability for bad checks written by Murphy on his personal account when no such defense was pled by defendant.

Defendant's pleading consisted of a general denial. This was sufficient to put in issue every material allegation of plaintiff's petition except those required to be denied under oath. Trevino v. American Nat. Ins. Co., 140 Tex. 500, 168 S.W.2d 656 loc. cit. 659 (8, 9), opinion adopted. Under plaintiff's theory it was essential that the words "property" and "properties" employed in the bond be construed to include moneys advanced by plaintiff to Murphy. The general denial put the burden on plaintiff to obtain such construction. No affirmative pleading was required of defendant. In this connection point 3 should be considered. This point is that the court erred in holding that the construction of the bond within its four corners never contemplated liability for cash advancements made to Murphy by plaintiff. The case of Burlington Ins. Co. v. Johnson, 120 Ill. 622, 12 N.E. 205 which was cited in Coursey v. Volunteer State Life Ins. Co., Tex.Civ.App., 76 S.W.2d 217, on which appellee relies is directly in point. The court there pointed out that the bond was to secure the faithful performance of the contract and that it nowhere appeared in the contract that the insurance company was to advance money to the employee. Here we have no written contract of employment. The only light thrown on the nature of the contract of employment by any written instrument is the recital in the bond that

> "The said principal has accepted employment with said obligee, which employment contemplates the principal having in his possession at time certain property belonging to obligee."

Since the liability of a surety is strictissimi juris and cannot be extended by implication or construction beyond the terms of his contract, 39 Tex.Jur. p. 918, Sec. 22, it cannot be held that the bond itself provides for repayment of advances. If the oral testimony be resorted to in order to ascertain the circumstances under which the bond was executed to throw light on its meaning, there is such a sharp conflict in the testimony that the court's finding (5) is binding on us and we must assume

that the parties never intended that the bond should cover advances made to Murphy. Therefore the court's conclusion that the term "property" used in the bond did not contemplate and did not embrace such cash advancements, is sustained.

Little need be said with reference to appellant's further contention that the term "property" as used in the bond included checks drawn by Murphy on his personal bank account and cashed by plaintiff's customers which plaintiff paid in order to retain the good will of such customers. If it be conceded that good will is property, the theory that Murphy embezzled such property by cashing hot checks with plaintiff's customers is so fantastic that we cannot think such contention is seriously made. Good will is an intangible asset. Murphy could never possess plaintiff's good will. He might injure it, but he could never account for or turn it over to plaintiff within the terms of the bond. Therefore good will was not covered by the bond and the court correctly so held.

Point 2 is that the court erred in finding that plaintiff through its representative did not explain to defendant that the employment of Murphy contemplated that Murphy would have in his possession sums of money belonging to or owed to plaintiff. The evidence was sharply conflicting on this issue and the court's finding (5) is binding on this court.

Point 4 is that the court erred in holding that the construction of the bond within its four corners never contemplated liability for bad checks written by Murphy on his own personal account. What we have said in disposing of point 1 disposes of this point.

Point 5 is that the court erred in permitting over plaintiff's objection Mrs. Jack Evans to testify as to a conversation between defendant and an unknown and unidentified party. It is abundantly clear from the testimony as a whole, including that of Selmer himself, that the conversation to which Mrs. Evans referred and testified she heard in part, was between

Selmer and defendant. This conversation bore directly on the issue of whether defendant was advised by Selmer that Murphy in the course of his employment was to come into possession of plaintiff's money. It was therefore admissible.

All of appellant's points are overruled, and the judgment is affirmed.